Johnson, C. J.' The main points presented in this case arise out of the instructions givfen by the court to the jury. The court gave three several instructions: 1st. That, unless the jury were satisfied, from the evidence, that Tucker & Hamilton acted as the agents of Crumbacker, they were bound in this action to find for them: 2d. That when the steamboat Uncle Ben failed to deliver said bale of domestic goods to said Crumbacker, she became liable to him upon his bill of lading: and 3d. That if Crumbacker had instituted an action for the specific goods, he might have recovered the goods in whose hands soéver he might have found the same. The two latter instructions are doubtless correct in point of law: yet, as they are not applicable- to the present case, they cannot be regarded" as any thing more than abstract propositions. The first is clearly erroneous, as it falls infinitely short of the principles governing this case. It is true that, in case the defendants in error had sold the goods in question as the agents of Crumbacker, they would have been liable to him for the proceeds of the sale, yet it does not follow, by any means, that this is the only conceivable state of case in which they would have been liable to Crumbacker upon the supposition that he was the real owner of the goods. If the goods in controversy were received by the steamboat Uncle Ben, to be conveyed to Crumbacker, and a bill of lading to that effect given by a party authorized to bind the boat, there can be no doubt but that the moment the goods were delivered to the boat, the property in the same passed to and vested in Crumbacker. To constitute a delivery in law, it is not necessary that it should be made to the buyer personally, or that the goods came to his corporeal touch; but it will be sufficient if they be delivered to an accredited agent, or servant, of the vendee, or a third person designated by him as the person who would receive them. The delivery should be made either according to the mode prescribed in the agreement, or, in the absence of any agreement as to the person or mode in which they should be delivered, the seller should follow the most usual and convenient practice, so as to give the buyer the benefit of every security which he could reasonably expect. (See Story on Sales, 245, and the authorities there cited.)' So also the delivery to a common carrier will be a sufficient delivery to the vendee, although the right of stoppage in transitu still remains in the vendor. Thus, a delivery, by a consignor of goods on board of a general ship, or of a ship chartered by the consignee, is a delivery to the consignee. Nor does it matter, so far as the title is concerned, which party pays freight for the goods, the carrier being always considered as the agent of the buyer. In case of loss or injury of the goods, while in the hands of the carrier, the buyer alone will be entitled to an action against him, unless the freight be paid by the seller, in which case the latter may bring an action for non-delivery. Of course, if the seller expressly assume the responsibility of carrying the goods, he must bear the loss if they be destroyed or lost. (lb. 246.) There can be no question but that the steamboat received the goods in the capacity of a common carrier; if so, it now remains to be seen whether she had any power to sell them, and to pass a title to the vendee. If she had no authority to sell the goods, it necessarily follows that a bill of sale by her would be void as against Crumbacker, and as such his right of action against Tucker & Hamilton could not be affected by the question ■whether she had received payment or not. There is a marked distinction which obtains between cases where sales are made of property to which the vendor has obtained a title by fraudulent means, and cases where the vendor has no title-, and has obtained possession of the goods by felony or chance, or who holds them as a mere bailee. In the former class of cases where the vendor has obtained his title by fraudulent representations, or artifices, he can make a valid sale of the goods to a bona fide purchaser for a valuable consideration, so as to deprive the original owner of his power to reclaim them. The reason of this rule is, that where property is obtained with the assent of the real owner, however he may have been deceived, the contract is not void, but only voidable at the instance of the party deceived. A valid title, therefore, passes to the vendee, subject indeed to the. avoidance of the contract by the vendor, but being perfectly good until such avoidance is made. If, then, the vendee should, while in possession of the goods and before the nullification of the contract by the vendor, sell to a bona fide purchaser for a valuable consideration, the sale would bo binding as against the original vendor. If, however, the sale be without consideration, or be made to a person purchasing with knowledge that they were obtained with fraudulent representations, the original owner may follow the goods, or their proceeds, into the hands of such vendee. But where the vendor has acquired possession of goods without the knowledge, connivance, or assent of the actual owner, — as, where he has stolen, or found them; or where he holds them in a fiduciary capacity, with no express or implied right, obtained from the orvner, to sell or otherwise dispose of them, as where he is a bailee or trustee, he cannot make a valid sale of them, so as to divest the owner of his right to reclaim them from any person having possession of them, although such person may have bought them bona fide. The reason which sustains this rule is, that until the owner cither expressly or impliedly agrees to part with his rights of property, or does some act which operates to deceive the vendee into a belief that the vendor has a right to make a sale, his property is never divested from him. Some -voluntary act of divestment on his part, or some conduct from which his assent to the sale is legally implied, is necessary in order to enable any other person to make a valid sale of his property. When these principles are applied to the case before us, the result is easily foreseen and is inevitable. That the property in the goods passed to and vested in Crum-backer, eo instanti, upon the delivery to the boat, is too clear a proposition to admit of serious controversy. And if so, by what authority, either express or implied, did the boat, or those having the control of her, make the sale to Tucker & Hamilton ? There is certainly no evidence of an express authority, and, if any existed, it must be implied by law from the fact that the property was placed in the hands of the officers of the boat under such circumstances, or in such a manner as that the law would imply a right and power on their part to make a valid sale. Is it the custom and business of common carriers to sell goods, or are they usually employed in their transportation from one point to another? It is readily admitted that if goods should be placed in the hands of an auctioneer, or other person whose business it is to sell property, and that too without any authority expressly given to sell, a sale by such person would be valid to an innocent purchaser, and this upon the ground that the law would imply an authority, and consequently protect the purchaser. But not so with a common carrier. In such' cases there is not the slightest ground for a legal presumption of authority, and consequently all persons who make purchases from them must look out for themselves and buy at their peril. But it is contended that, inasmuch as the boat could have recovered the specific articles, that, therefore, she could also have recovered the consideration money in case of a sale: and that, therefore, Crumbacker could have no right of action against the defendants. The premises me not true when applied to the facts of this case, and consequently the conclusion is unwarranted by the law. If the articles had been taken from the boat without her consent, or delivered to the defendants by mistake and not actually sold to them, there can be no doubt but that the boat, in virtue of her special property, would have been fully able to recover the specific articles, if still to be found, or their value, if converted; but no such right would exist in case of a sale, as it would be placing it in the power of the boat to take advantage of her own wrong,' and at the same time to perpetuate a fraud upon the defendants. If the defendants actually paid the purchase money to the boat, they did so at their peril, and consequently such payment can constitute no defence to this action. But if, on the contrary, the price has not yet been paid, .they are under no legal obligation to pay it to the boat, as she had no authority to sell, and consequently could convey no title whatever to the property. When there is a total failure of title ©n the part of the vendor, but without fraud, the purchaser may avail himself of such fact as a defence to an action for the consideration money, or he may wholly abandon the contract, or he may reclaim any portion of the purchase money which he may have advanced, provided that, within reasonable time after the discovery of the deficiency of title, he give notice thereof to the seller, and offer to return the goods. It is clear, therefore, that in case the identity of the goods shipped to Crumbacker was established by proof, the verdict should have been for, instead of against, him. From this view ©f the legal principles applicable to this case, we are opinion that the judgment of the court below, in overruling the motion for a new trial, ought to be reversed. The judgment is therefore reversed, and the cause remanded.